Nos. 22-1919/1939

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

_____

MICHAEL PUNG,
Personal Representative of the Estate of Timothy Scott Pung
*Plaintiff – Appellant – Cross Appellee*,

v.

PETER M. KOPKE, in his personal capacity;
PATRICIA DEPRIEST, in her personal capacity;
STEVEN W. PICKENS, in his personal capacity;
*Defendants - Appellees*

and

ISABELLA COUNTY, MICHIGAN
*Defendants – Appellees – Cross Appellant*

_____

On Appeal from the United States District Court
for the Eastern District of Michigan – Southern Division
Honorable Denise Page-Hood, District Court Judge

_____

**APPELLANT MICHAEL PUNG'S (FIRST) BRIEF**

_____

PHILIP L. ELLISON (P74117)
OUTSIDE LEGAL COUNSEL PLC
PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

## CORPORATE DISCLOSURE STATEMENT

Appellant has no parent corporation and is not a publicly held corporation owning 10% or more of stock of a party. FRAP 26.1(a).

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................. *iii*

STATEMENT IN REGARDS TO ORAL ARGUMENT...................... *viii*

JURISDICTIONAL STATEMENT .......................................... 1

STATEMENT OF THE ISSUE(S) PRESENTED FOR REVIEW ............ 2

FACTS / STATEMENT OF THE CASE ................................... 3

STANDARD OF REVIEW.................................................. 17

SUMMARY OF ARGUMENT ............................................. 18

ARGUMENT .............................................................. 20

   I.    Claims against Isabella Cnty & Pickens (Official Capacity)..... 20

       A.   Fifth Amendment - Fair Market Value............................ 21

       B.   Eighth Amendment Excessive Fines............................. 25

  II.   Equal Protection Claim against DePriest Only ...................... 33

 III.  Due Process Claims against Pickens, DePriest, and Kopke...... 38

       A.   Kopke ............................................................ 44

       B.   DePriest and Pickens............................................ 46

CONCLUSION / RELIEF REQUESTED ................................... 49

CERTIFICATE OF COMPLIANCE........................................ 51

CERTIFICATE OF SERVICE.............................................. 52

DESIGNATION OF RELEVANT
DISTRICT COURT DOCUMENTS ........................................ 53

# TABLE OF AUTHORITIES

### C<small>ASES</small>

*Albert Hanson Lumber Co. v. United States,*
   261 U.S. 581 (1923) ...................................................................... 23

*Almota Farmers Elevator & Whse Co. v. United States,*
   409 U.S. 470 (1973) ................................................................. 22, 23

*Alta Eldorado Partnership v. County of Santa Fe,*
   634 F.3d 1170 (10th Cir. 2011) ................................................... 21

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ................................................................. 18, 44

*Austin v. United States,*
   509 U.S. 602 (1993) ......................................................... 28, 29, 32

*Bazzi v. City of Dearborn,*
   658 F.3d 598 (6th Cir. 2011) ............................................ 38, 39, 46

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ...................................................................... 44

*Boston Chamber of Commerce v. Boston,*
   217 U.S. 189 (1910) ...................................................................... 25

*Brown v. Legal Found. of Wash.,*
   538 U.S. 216 (2003) ...................................................................... 25

*Browning-Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.,*
   492 U.S. 257 (1989) ...................................................................... 26

*Cooper Industries, Inc. v. Leatherman Group,*
   532 U.S. 424 (2001) ...................................................................... 26

*DirecTV, Inc. v. Treesh,*
   487 F.3d 471 (6th Cir. 2007) ................................................. 17, 44

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

*DLX, Inc. v. Kentucky,*
    381 F.3d 511 (6th Cir. 2004) ........................................................ 17

*Fox v. Saginaw Cnty.,*
    2022 WL 523023 (6th Cir. 2022) ................................................ 21

*Freed v. Thomas,*
    2021 WL 942077 (E.D. Mich. 2021) ............................................ 22

*Freed v. Thomas,*
    81 F.4th 655 (6th Cir. 2023) ........................................... 22, 24, 31

*Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
    918 F.2d 658 (6th Cir. 1990) ................................................ 47, 48

*George v. Youngstown State Univ.,*
    966 F.3d 446 (6th Cir. 2020) ........................................................ 18

*Golden v. City of Columbus,*
    404 F.3d 950 (6th Cir. 2005) ........................................................ 17

*Hall v. Meisner,*
    51 F.4th 185 (6th Cir. 2022) ................................................. 22, 23

*Hensley v. Gassman,*
    693 F.3d 681 (6th Cir. 2012) ........................................................ 39

*In re Brent,*
    68 B.R. 893 (Bankr. D.Vt. 1987) ................................................ 48

*In Re Petition of Isabella County Treasurer,*
    2017 WL 1393854 (Mich. Ct. App. April 18, 2017) ...................... 47

*In re Petition of Tuscola Cnty. Treasurer for Foreclosure,*
    895 N.W.2d 569 (Mich. Ct. App. 2016) *lv denied*
    900 N.W.2d 879 (Mich. 2017) .................................................. 12-13

*Interstate Cir., Inc. v. United States,*
    306 U.S. 208 (1939) ..................................................................... 35

*Isabella Cnty. Treasurer v. Estate of Pung,*
    2015 Mich. App. LEXIS 227 (2015) ............................................ 37

*Johnson v. City of Saginaw, Mich.*,
  980 F.3d 497 (6th Cir. 2020) ........................................................ 48

*Keweenaw Bay Outfitters v. Dep't of Treasury*,
  651 N.W.2d 138 (Mich. Ct. App. 2002) ........................................ 29

*Kirilenko-Ison v. Bd. of Edu. of Danville Indep. Schs.*,
  974 F.3d 652 (6th Cir. 2020) ........................................................ 18

*Knick v. Twp. of Scott*,
  139 S. Ct. 2162 (2019) .................................................................. 23

*Marqus v. Barr*,
  968 F.3d 583 (6th Cir. 2020) ........................................................ 17

*N.W. La. Fish & Games Pres Comm'n v. United States*,
  446 F.3d 1285 (Fed Cir. 2006) ...................................................... 21

*Penn Central Transp Co. v. New York City*,
  438 U.S. 104 (1978) ...................................................................... 21

*Pimentel v. City of Los Angeles*,
  974 F.3d 917 (9th Cir. 2020) ........................................................ 28

*Prater v. City of Burnside, Ky*,
  289 F.3d 417 (6th Cir. 2002) ........................................................ 21

*Pumpelly v. Green Bay Co.*,
  80 U.S. (13 Wall.) 166 (1872) ...................................................... 21

*Rafaeli, LLC v. Oakland Cnty.*,
  952 N.W.2d 434 (Mich. 2020) ...................................................... 22

*Rental Props. Owners Ass'n of Kent Cnty. v. Kent Cnty. Treasurer*,
  866 N.W.2d 817 (Mich. Ct. App. 2014) ........................................ 48

*Revis v. Meldrum*,
  489 F.3d 273 (6th Cir. 2007) ........................................................ 39

*Smith v. Cliffs on the Bay Condominium Ass'n (On Remand)*,
  626 N.W.2d 905 (Mich. Ct. App. 2001) ........................................ 29

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

*State of Ohio v. United States,*
 986 F.3d 618 (6th Cir. 2021) ........................................................ 32

*Timbs v. Indiana,*
 139 S.Ct. 682 (2019) ................................................... 26, 27, 30

*Tyler v. Hennepin Cnty.,*
 143 S. Ct. 1369 (2023) ............................................. 22, 27, 28, 31

*United States v. 564.54 Acres of Land,*
 441 U.S. 506 (1979) ..................................................................... 25

*United States v. Bajakajian,*
 524 U.S. 321 (1998) ............................................................. 29, 30

*United States v. Miller,*
 317 U.S. 369 (1943) ..................................................................... 23

*United States v. Pennsylvania-Dixie Cement Corp.,*
 178 F.2d 195 (6th Cir. 1949) ...................................................... 23

*United States v. Reynolds,*
 397 U.S. 14 (1970) ....................................................................... 23

*United States v. Virginia Electric Co.,*
 365 U.S. 624 (1960) ..................................................................... 23

*Warren v. City of Athens, Ohio,*
 411 F.3d 697 (6th Cir. 2005) ...................................................... 34

*Webb's Fabulous Pharmacies, Inc. v. Beckwith,*
 449 U.S. 155 (1980) ..................................................................... 24

*Weberg v. Franks,*
 229 F.3d 514 (6th Cir. 2000) ...................................................... 39

*Willowbrook v. Olech,*
 538 U.S. 562 (2000) ............................................................. 33, 37

OUTSIDE LEGAL COUNSEL PLC

www.olcplc.com

<div style="text-align:center; font-variant: small-caps">

COURT RULES

</div>

FRCP 56.................................................................................. 18

<div style="text-align:center; font-variant: small-caps">

CONSTITUTIONAL PROVISION(S)

</div>

U.S. Const. amend. V ............................................................ 21

U.S. Const. amend. VIII ......................................................... 26

<div style="text-align:center; font-variant: small-caps">

STATUTE(S)

</div>

28 U.S.C. § 1291 ....................................................................... 1

28 U.S.C. § 1331 ....................................................................... 1

28 U.S.C. § 1343 ....................................................................... 1

42 U.S.C. § 1983 ....................................................................... 1

M.C.L. § 211.2......................................................................... 41

M.C.L. § 211.7cc ............................................................ 8, 41, 48

M.C.L. § 211.78a.................................................................... 30

M.C.L. § 211.78g.................................................................... 30

M.C.L. § 211.78h ................................................................... 29

M.C.L. § 211.78m .................................................................. 30

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

## STATEMENT IN REGARDS TO ORAL ARGUMENT

Appellant, by counsel, requests oral argument unless this Court believes such would not be of assistance to the assigned panel.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction to entertain and hear this case pursuant to 28 U.S.C. § 1331 and § 1343 as this case involves federal questions under the United States Constitution and federal civil rights under 42 U.S.C. § 1983.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 to review the District Court's final judgment (and all prior orders and decisions) as that was entered on September 29, 2022. **Judgment, RE 34, PageID # 1114**. Plaintiff-Appellant Michael Pung timely appealed to this Court thereafter. **Notice of Appeal, RE 35, PageID # 1116.** The final judgment remains unpaid (and no stay sought) by Defendant Isabella County.

-1-

## STATEMENT OF THE ISSUE(S) PRESENTED FOR REVIEW

I.   Does the Fifth Amendment's command for just compensation require the payment of the loss of fair market value for Plaintiff's successful takings claim?

II.  Did the District Court commit reversable error in dismissing the Eighth Amendment's excessive fine claim?

III. Is this Court duty bound to follow clearly controlling Supreme Court precedent of *Austin* rather than the panel holding in *Freed* or *Hall* for the Eighth Amendment claim?

IV.  Did the District Court commit reversable error in dismissing the *Olech* equal protection class-of-one claim against Defendant DePriest?

V.   Did the two trial judges (before and after transfer) commit reversable error when dismissing the conspiracy to violate due process claim pled and asserted against various Defendants?

**Appellant answers "Yes" to all five questions.**

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

## FACTS / STATEMENT OF THE CASE

In 1991, Timothy Pung purchased his home located at 3176 St. Andrews Drive, Union Township, in Isabella County (hereinafter the "Pung Property") for the tidy sum of $125,000.00. **Deed, RE 23-2, PageID # 764.**



Fourteen years later, Timothy Pung unexpectedly died in 2004 leaving behind his wife, Donnamarie, and two children. **Michael Pung Decl., RE 23-17, PageID # 843** (¶3). Timothy's wife lived in the home until 2008. *Id.* (¶6). Immediately thereafter, Marc Pung, Timothy's son, lived at the Pung Property. *Id.* (¶7). Until after the lawsuit was filed, it has

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

always been occupied by Donnamarie and Marc continuously and held by Timothy's probate estate (which still remains unsettled and open due to this litigation and other issues). **Tax Tribunal Decision, RE 23-4, PageID # 770**. At the time this suit was filed, the Pung Property had not been conveyed by deed to anyone else.

Prior to the time of Timothy's death, the Pung Property had long previously filed for and been granted a valid Principal Residence Exemption ("PRE")—the modern term for what was formerly known as the Michigan homestead property tax exemption. **Homestead Aff., RE 23-3, PageID # 765**; see also **FAQ, RE 23-5, PageID # 772**. A PRE credit exempts a primary residence from the tax levied by a local school district for school operating purposes up to 18 mills. ***Id.*** The credit results in a reduction of one's real property taxes on an annual basis.

Under Michigan tax law, when an "owner of property filed an affidavit for an exemption [] before January 1, 2004, that affidavit shall be considered the affidavit required under this subsection for a principal residence exemption and that exemption shall remain in effect until

rescinded as provided in this section." M.C.L. § 211.7cc(2).[1] The death of an owner does not cancel or automatically rescind the entitlement to a PRE.

Notwithstanding, six years after Timothy's death in 2010, Defendant Patricia DePriest, the long-time assessor for Union Township, *sua sponte* revoked the Pung Property's PRE for the tax years 2007, 2008, and 2009 allegedly for lack of a new affidavit following the death of Timothy Pung. **Tax Tribunal Decision, RE 23-4, PageID # 769**; **Michael Pung Sec. Decl., RE 25-16, PageID # 986** (¶4). Doing so increased the real property taxes on the Pung Property to an amount equal to the now-revoked PRE credit. She had no basis to do this.

Timothy's uncle and the personal representative (executor) of his probate estate, Plaintiff Michael Pung ("PR Pung"), believed the actions of DePriest to be in legal error and challenged her decision. **Michael Pung Decl., RE 23-17, PageID # 843** (¶8). Such challenges go before the Michigan Tax Tribunal, a specialized Michigan non-judicial tribunal presided over by an ALJ. **DePriest Dep., RE 23-18, PageID # 852**.

---

[1] DePriest even acknowledge this affidavit is valid in its existing form. **DePriest Dep., RE 23-18, PageID # 852**.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

On March 7, 2012, ALJ Lasher found in favor of the Estate and declared the PRE credit as rightfully belonging to the Pung Property and was wrongful taken away by DePriest. **Tax Tribunal Decision, RE 23-4**. In other words, the tax-increase imposed by DePriest was never due and removing the PRE by DePriest was unlawful. *Id.* Ironically and defiantly, DePriest still refuses to accept that binding ruling against her. **DePriest Dep., RE 23-18, PageID # 852**. ("I don't believe I made an error, sir."); *id.* **at PageID # 853** ("I did not error in denying '7, '8 and '9."); but see *id.* (p. 27) (Q: "[t]he Michigan Tax Tribunal Administrative Law Judge did not agree with your [DePriest's] position in this case, correct? DePriest. Correct") with **Tax Tribunal Decision, RE 23-4** (finding DePriest errored). Moreover, ALJ Lasher never required a new PRE affidavit because the original 1994 affidavit was already on file. *Id.* As DePriest herself confirmed, ALJ Lasher expressly instructed her at the hearing that the Estate "didn't have to" sign any further affidavit to be entitled to the PRE credit. **DePriest Dep., RE 23-18, PageID # 857**. In short, DePriest simply lost due to her error of law. This apparently stung her hard and personally.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

Despite ALJ Lasher's decision, DePriest still blatantly refused to return the PRE credit back to the property tax rolls as to the Pung Property. This, again, directly resulted in a similar unpaid amount of property taxes equal to an amount consisting of the PRE credit amount for the 2010 and 2011 tax years despite no change in circumstances. Knowing this tax cannot possibly be imposed due to ALJ Lasher's decision and oral directive, the County Treasurer, Defendant Steven Pickens, nevertheless began tax foreclosure proceedings on the Pung Property for the "unpaid" amount of the PRE for 2010 and 2011 as a result of DePriest's obstinance against ALJ Lasher's directive. PR Pung again challenged that decision before the local circuit court in Mount Pleasant, Michigan and prevailed again. **State Court Decision, RE 23-6, PageID # 773-778.**

Plaintiff's executor thought everything was back on track but little did know that ill-will and spite still existed in the hearts of local officials. **Michael Pung Sec. Decl., RE 25-16, PageID # 986** (¶¶15, 18, 21). He timely paid. **Id.** (¶16). About this same time in February 2013, DePriest starts at it yet again. If DePriest, as the assessor, believes a property is not entitled to its PRE credit, she may revoke it by 1.) notifying the owner

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

and 2.) the Michigan Treasury Department in writing of the reason for the denial. M.C.L. § 211.7cc(6). The assessor must advise the owner that the denial may be appealed to the Michigan Tax Tribunal within 35 days thereafter. *Id.* Remember, since March 2012 (a year prior), DePriest already learned from and was ordered by ALJ Lasher's prior decision that there was no legal basis to deny the PRE credit while the Estate held the property while probate remained ongoing. See **Tax Tribunal Decision, RE 23-4.** So there was absolutely no reason to deny the PRE credit again for the 2010, 2011, or 2012 tax year when nothing changed, probate-wise, since ALJ Lasher's decision finding that a new affidavit was not required.

Initially, for the Winter 2012 taxes (calculated in late 2011), DePriest correctly applied the PRE credit consistent with ALJ Lasher's decision. **Winter 2012 Tax Bill, RE 23-19, PageID # 865**; **Michael Pung Sec. Decl., RE 25-16, PageID # 986** (¶¶15-16). It is undisputed the issued tax bill for the Pung Property contained the PRE credit. *Id.* (highlighted). DePriest testified she "granted" (i.e. applied) the credit for the Winter 2012 tax bill because she was "tired of fighting" and because "Judge Lasher said the Estate didn't need to" to submit another PRE affidavit. **DePriest Dep., RE 23-18, PageID # 857**. She is right.

DePriest further conceded that "a property owner would have believed and understood that the PRE credit had been fully and completely granted" based on the Winter 2012 tax bill. ***Id*. at PageID # 855**. It is undisputed that PR Pung later paid this actual-billed amount in full for the Estate containing the PRE credit. **Michael Pung Decl., RE 23-17, PageID # 843** (¶10).

Yet, *after* the Winter 2012 tax bills went out in December (i.e. the tax rolls closed) and Pung had paid in full, DePriest apparently became re-invigorated (i.e. began bitter) to once again revoke the PRE on February 7, 2013, **Michael Pung Sec. Decl., RE 25-16, PageID # 986** (¶17), despite being previously told by both *explicitly* by ALJ Lasher and *implicitly* by the Court of Appeals that such cannot and need not occur. **ALJ Decision, RE 25-4**; **Mich. Ct. App. Decision, RE 25-7, PageID # 960**). DePriest posits that she was told by then Chief Clerk of the Michigan Tax Tribunal, Peter Kopke, that she "had no right to give that homestead [PRE credit] and [she] had to deny it." **State Ct. Transcript, RE 23-8, PageID # 796**; see also **DePriest Affidavit, RE 19-7, PageID # 668** (similar). But that is simply false.

Clerk Kopke has offered an affidavit averring that he "did not

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

provide legal advice or direction to anyone regarding any ongoing property tax issues or disputes…" **Kopke Affidavit, W.D. RE 74-1, PageID # 683**. He also confirms that he "did not… direct Ms. DePriest to take any action regarding any property owned by Mr. Pung." ***Id.*** DePriest says otherwise. **State Ct. Tr., RE 23-8, PageID # 795-796**.

DePriest again revoked even though the tax bills had already been previously issued over two months prior. **Michael Pung Decl., RE 23-17, PageID # 843** (¶¶11-12). DePriest never followed the processes of M.C.L. § 211.7cc(6). ***Id.*** (¶13). There is no record at the Michigan Department of Treasury of any such revocation of the PRE being issued and Plaintiff avers, under oath, he never received any such notice from DePriest. ***Id.*** Interestingly, DePriest, in her deposition, could not remember if she even provided the required copy of the notice to the Department of Treasury. **DePriest Dep., RE 23-18, PageID # 859**. In Plaintiff's view, DePriest secretly revoked the PRE without notice to the Estate or the Department of Treasury to intentionally create a false tax debt not actually owed. This was done in concert with Treasurer Pickens given the pending litigation in the local circuit court as to the 2010/2011 tax challenge which did not contain the PRE credit either. No such notice

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

was ever received by Mr. Pung (as the PR of the Estate) and anyone associated with the property (like Timothy's son, Marc). **Michael Pung Decl., RE 23-17, PageID # 843** (¶13).[2]

Because no written notice was received by PR Michael Pung, he, as the PR, was never given the opportunity to timely appeal Winter 2012 denial of the PRE credit despite the fact that the exact same issue as had been fought – and previously won – by him (and later rejected for 2007, 2008, 2009, 2010, and 2011 by ALJ Lasher and ultimately confirmed by the Michigan Court of Appeals). By the time DePriest's debauchery was realized by the Estate, it was simply too late to again activate the machinery of the Tax Tribunal despite written requests for the help. **Pung Letter to Kopke, RE 25-20, PageID # 1032.** DePriest acted to intentionally handicap the Estate and inflict real lasting harm.

---

[2] DePriest, on the other hand, claims, at different times, she did send the notice and PR Pung simply never timely appealed. Her story is facially inconsistent. First, she claims she sent the notice to PR Pung *in Alma, Michigan*. **DePriest Dep., RE 23-18, PageID # 860** ("I actually sent it to Mr. Pung in Alma"). She failed to list this address in the form. *Id.* **at PageID # 860-861.** Yet, in a letter to her counsel (as turned over by her counsel in this case), she asserts she sent the notice to Marc Pung, Timothy's son, *in Mount Pleasant*. **DePriest Ltr, RE 23-20, PageID # 866**. Alma and Mount Pleasant are in totally different Michigan counties. Viewing in favor of Plaintiff, DePriest is being untruthful.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

A year later in 2014, Treasurer Pickens, on behalf of Isabella County, re-commenced tax foreclosure proceedings once again against the Pung Property for not paying the *non-owed* improper remaining balance added by DePriest as to the Winter 2012 taxes, plus the interest and penalties generated (without notice). Pickens acted, in concert with DePriest, with both knowing that the unpaid tax "debt" was based on fully discredited legal theory of the lack of a new PRE affidavit. Because such was discredited, the tax was never legally owed. See **Tax Tribunal Decision, RE 23-4.** Michigan tax foreclosures are handled as an *in-rem* petition filed by Pickens with the local state circuit court. M.C.L. § 211.78k. Again, actual notice of foreclosure from Pickens was also not received by PR Pung that the Pung Property was being foreclosed upon for improper remaining balance not actually owed. **Michael Pung Decl., RE 23-17, PageID # 844** (¶¶15-22).

Michigan has some the strictest tax foreclosure standards. If a property is not redeemed before March 31 of the forfeiture year, there is nothing a Michigan court can do to set aside a judgment, even when the judgment of foreclosure was erroneously entered. See *In re Petition of Tuscola Cnty. Treasurer for Foreclosur*e, 895 N.W.2d 569 (Mich. Ct. App.

2016) *lv denied* 900 N.W.2d 879 (Mich. 2017). Moreover, actual notice is not required to meet due process requirements on the *in-rem* foreclosure petitions in Michigan. Sadly, the only notice PR Pung received from Pickens regarding foreclosure was a letter dated two days *after* the last possible redemption date of March 31 while the dated letter was not mailed until April 22. **Michael Pung Decl., RE 23-17, PageID # 844** (¶21).

But it wasn't that PR Pung did not try. He took immediate legal steps to set aside the foreclosure again for a tax in 2012 that was never owed. PR Pung and his state-level trial counsel tried fervently to get the forfeiture reversed via legal actions before the Isabella County Trial Court. PR Pung was initially successful. **State Ct. Decision, RE 23-10.** Yet, Pickens appealed to seize the Pung Property on a tax he *knew* was never owed. The Michigan Court of Appeals reversed concluding that the Michigan Legislature divested the state circuit court of the authority to set aside a tax foreclosure for lack of notice. **Mich. Ct. App. Decision, RE 25-7**. The Michigan Supreme Court refused to take action on the case. **Mich. Supreme Ct. Order, RE 23-12**. A final foreclosure judgment was entered on June 12, 2018.

Pickens, on behalf of Isabella County, later sold the Pung Property at tax auction and conveyed it to a third party on July 16, 2019 (after this lawsuit had started) for only $76,000.08. **Deed, RE 23-13, PageID # 822**. It was worth at least $194,400, "a sum significantly in excess of the $76,008.00 for which the [Pung] Property was sold [by Pickens for Isabella County] at the foreclosure sale." **Opinion, RE 33, PageID # 1098**. A short while later (while this suit was pending), the investor who bought the Pung Property at auction turned around and re-sold the Pung Property for $195,000, being within $600 of the estimated fair market value. **Transcript, RE 53, PageID # 1330**.

Plaintiff, as the personal representative of the Estate, filed suit in November 2018 against Peter Kopke, Patricia DePriest, and Steven Pickens. Later, Isabella County and Pickens in his official capacity were added after foreclosing upon and auctioning the Pung Property for far less than half of its actual fair market value. The case was initially brought in the US District Court for the Western District of Michigan (Jonker, J) who summarized the case as follows—

> Plaintiff's first set of claims assert that [the Estate] was unfairly targeted by the County Assessor (Defendant DePriest) and the County Treasurer (Defendant Pickens) because of an earlier round of tax litigation over the homestead exemption in

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

which he prevailed. According to Plaintiff, this so angered defendants DePriest and Pickens that they conspired with a State ALJ (Defendant Kopke) to concoct a tax bill that unlawfully failed to apply the homestead exemption despite plaintiff's litigation win. To add insult to injury, Plaintiff says these defendants kept the inflated tax bill a secret from Plaintiff until after a critical deadline, lulling Plaintiff into believing he had paid the full tax properly assessed with credit for the homestead exemption.

Plaintiff says the scheme was retaliation for his success in the first round of homestead exemption litigation, a potential First Amendment violation; and contrary to the notice requirements built into Michigan law and inherent in due process, a potential violation of his Procedural Due Process rights. Plaintiff also says the fact pattern states a claim for a potential Class of One theory under the Equal Protection Clause as applied in *Willowbrook v. Olech*, 528 U.S. 562 (2000). According to Plaintiff, Defendants DePriest and Pickens were the main actors who hatched and executed the scheme together. But Plaintiff says this was "possibly" after a phone call with Defendant Kopke regarding how the homestead exemption works in Michigan, and so Plaintiff alleges Defendant Kopke, too, is potentially liable for the scheme as a co conspirator.

***

Plaintiff's second set of claims asserts that the County itself unconstitutionally kept all the proceeds from the tax sale, rather than just the relatively small amount necessary to satisfy the balance of the tax bill allegedly still due. Plaintiff says this is either a Fifth and Fourteenth Amendment takings claim; or failing that for some reason, a violation of the Eight Amendment's prohibition on excessive fines. The defendants' position throughout most of this litigation has been that Michigan law expressly permits a County to retain the full amount of any tax foreclosure proceeds, not just the amount necessary to satisfy an outstanding bill; and that this does not amount to an unconstitutional taking because the taxpayer forfeited any protected property interest as a result of the order

of foreclosure that necessarily preceded the tax sale itself.

**W. Dist. Opinion, W.D. RE 119, PageID # 1349-1350.** After rejecting various unsuccessful defenses, Judge Jonker "continue[d] to believe that Plaintiff's allegations come up short as to Defendant Kopke" and dismissed him. ***Id.* at PageID # 1354, 1358.** For the remaining claims against Pickens and DePriest, they were permitted to proceed. As for the Fifth Amendment takings claims against Isabella County (and Pickens in his official capacity), Judge Jonker sua sponte granted summary judgment in favor of Plaintiff "leaving only the question of damages for further litigation." ***Id.* at PageID # 1358.** For the excessive fines claim, it was "dismissed without prejudice because plaintiff expressly raised this as only an alternative theory." ***Id.***

Because Kopke (the only West Michigan hook) was out of the case, the case was transferred to the US District Court for the Eastern District of Michigan (Page-Hood, J.). **W. Dist. Order, W.D. RE 144, PageID # 1434**. Following transfer and discovery, the District Court found "there was an unconstitutional taking" but Plaintiff is only entitled to the surplus proceeds (tax-foreclosure sale price less the tax debt owed, which includes delinquent taxes, interest, penalties, and fees reasonably

related to the foreclosure and sale of the property) from tax-foreclosure sale of the Property" plus *Knick* interest. **Opinion, RE 32, PageID # 1093**. It also dismissed all other claims against Defendants. **Opinions, RE 32, 33**; **Judgment, RE 34, PageID # 1114**. This appeal now follows. **Notice of Appeal, RE 35, PageID # 1116.**

## STANDARD OF REVIEW

First, all questions of law are reviewed de novo. *Marqus v. Barr*, 968 F.3d 583, 588 (6th Cir. 2020).

Second, this Court reviews dismissals premised on Rule 12(b)(6) de novo. *Golden v. City of Columbus*, 404 F.3d 950, 958 (6th Cir. 2005); *DLX,Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). A Rule 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). In reviewing a motion to dismiss, this Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Id*. The defendant has the burden of showing that the plaintiff has failed to state a claim for relief. *Id*. The complaint must state a claim

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

that is merely *plausible* on its face, i.e., needing only a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Third, reviews of decisions of Rule 56 motions are reviewed de novo as well. *Kirilenko-Ison v. Bd. of Edu. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020) (quoting *George v. Youngstown State Univ.*, 966 F.3d 446, 458 (6th Cir. 2020)). Under this Rule, the trial court can only grant summary judgment if two prongs are met—1.) "there is no genuine dispute as to any material fact" and 2.) "the movant is entitled to judgment as a matter of law." FRCP 56(a). In the absence of both or either, the motion must be denied.

## SUMMARY OF ARGUMENT

This case raises several issues about civil rights violations suffered by the Pung Estate involving the Pung Property. This Court is being asked to determine whether the Fifth Amendment's command for "just compensation" requires the payment of appropriate "fair market value" for the successful takings claim and whether the Eighth Amendment excessive fines claim, that was prematurely dismissed without prejudice, provides an alternative and correct constitutional tool for provide relief

for the property foreclosed upon sold for a mere fraction of the fair market value. To the latter's end, the Court is duty bound to follow clearly controlling Supreme Court precedent of *Austin* rather than the erroneous panel holding in *Freed* (following *Hall*).

Additionally, this Court is asked to reverse the lower District Court's decision to dismiss the *Olech* equal protection class-of-one claim against Defendant DePriest when the lack of evidence is sufficient proof to reach the *Pung* jury of DePriest intentionally treating Plaintiff differently from others similarly situated with no rational basis for the difference in treatment. Looking to the incorrect wrong alleged, there was also reversable error when dismissing the conspiracy to violate due process claim pled and asserted against various Defendants. The issues are heady and the facts are complicated, at times, but Plaintiff is entitled to relief against the games played by three governmental officials who caused real loss of the Pung Property because of their spiteful ill-will towards the Estate's executor, Michael Pung. Reversal is requested.

# ARGUMENT

## I. Claims against Isabella County and Pickens (Official Capacity)

In November 2020, the Estate filed for summary judgment as to the Section 1983 (premised on the Fifth Amendment). Judge Jonker, as the prior assigned judicial officer, found that Isabella County violated the Fifth Amendment but left the question of how much was owed for later decision. **Opinion and Order, W.D. RE 119, PageID # 1357-1359.** Following inter-district transfer, the Eastern District reaffirmed and found "there was an unconstitutional taking" but Plaintiff is instead only entitled to the surplus proceeds (tax-foreclosure sale price less the tax debt owed, which includes delinquent taxes, interest, penalties, and fees reasonably related to the foreclosure and sale of the property) from tax-foreclosure sale of the [Pung] Property" plus interest. **Opinion, RE 32, PageID # 1093**. Plaintiff agrees with the former but challenges the latter on appeal.

Additionally, the Eighth Amendment "excessive fines" claim was "dismissed *without* prejudice" because, according to the District Court, Plaintiff "expressly raised this as only an alternative theory." **W.D. RE**

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

**119, PageID # 1357-1358**; see also **Opinion, RE 32, PageID # 1079**
(recounting same). This challenge now follows.

### A.     Fifth Amendment - Fair Market Value

The Fifth Amendment mandates "nor shall private property be
taken for public use, without just compensation." U.S. Const. amend. V.
It applies to the States through the Fourteenth Amendment. *Penn
Central Transp Co. v. New York City*, 438 U.S. 104, 122 (1978). The
Takings Clause does not prohibit the taking of private property for public
use but rather requires compensation when a taking occurs. E.g. *Alta
Eldorado Partnership v. County of Santa Fe*, 634 F.3d 1170, 1174 (10th
Cir. 2011). A taking occurs when a government official (1) takes private
property (i.e. deprives the owner of all or most of its property interests)
and (2) fails to compensate justly. *Prater v. City of Burnside, Ky*, 289 F.3d
417, 425 (6th Cir. 2002); *N.W. La. Fish & Games Pres Comm'n v. United
States*, 446 F.3d 1285, 1289 (Fed Cir. 2006); *Pumpelly v. Green Bay Co.*,
80 U.S. (13 Wall.) 166, 177-178 (1872). The failure to pay "just
compensation" is generally what violates the Fifth Amendment.

Defendants' conduct, as the foreclosing governmental unit[3], has

---

[3] See *Fox v. Saginaw Cnty.*, 2022 WL 523023 (6th Cir. 2022)

been repeatedly been determined to be a taking. *Rafaeli, LLC v. Oakland Cnty.*, 952 N.W.2d 434 (Mich. 2020)*; Tyler v. Hennepin Cnty.*, 143 S. Ct. 1369 (2023); see also *Freed v. Thomas*, 2021 WL 942077 (E.D. Mich. Feb. 26, 2021). The United States Supreme Court unanimously confirmed recently that such practices were a federal taking, reasoning that a "taxpayer must render unto Caesar what is Caesar's, but no more." *Tyler*, 143 S. Ct. at 1376, 1380. The damages for unpaid just compensation are traditionally premised on the "fair market value" of the property taken, not just surplus proceeds. Yet, this Court recently held that damages suffered for a taking in this instance is limited to only "surplus proceedings" when sold at a public tax auction, *Freed v. Thomas*, 81 F.4th 655 (6th Cir. 2023), while damages are to be full "fair market value" if not sold at auction, *Hall v. Meisner*, 51 F.4th 185 (6th Cir. 2022). These decisions conflict with each other but Supreme Court precedent provides the proper measure of damages. And Supreme Court precedent controls.

When a taking occurs, required "just compensation" under the Fifth Amendment means "the full monetary equivalent of the property taken." *Almota Farmers Elevator & Whse Co. v. United States*, 409 U.S. 470, 473 (1973). As the Supreme Court expressly provided, compensation under

the Fifth Amendment consists of "the *total value* of the property when taken" plus "interest from that time." *Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2170 (2019) (emphasis added). The owner of taken property is to be put in the same position monetarily as it would have occupied if his property had not been taken. *Almota Farmers*, 409 U.S. at 473-474; *Albert Hanson Lumber Co. v. United States*, 261 U.S. 581, 586 (1923); *United States v. Reynolds*, 397 U.S. 14, 16 (1970); *United States v. Virginia Electric Co.*, 365 U.S. 624, 633 (1960). Stated another way, taking governments must pay "the full and perfect equivalent in money of the property taken." *United States v. Miller*, 317 U.S. 369, 373 (1943); *United States v. Pennsylvania-Dixie Cement Corp.*, 178 F.2d 195, 198 (6th Cir. 1949) (same). This is constitutionally mandated.

In *Hall*, this Court explained "'equitable title' under Michigan law, 'is measured by reducing *the fair market value* of the property by the amount due on… local tax liens." 51 F.4th at 195. *Hall* chided that "the only context in which Michigan law does not recognize equitable title as a property interest in land, apparently, is when the government itself decides to take it." *Id.*

However, in *Freed*, this Court did not follow the above language in

*Hall* and held a former property owner whose real property is worth many multiples of the outstanding tax delinquency is only "entitled to the amount of the [auction] sale above his debt and no more." *Freed*, 81 F.4th at 659. That is plainly in error against the great weight of Supreme Court precedent. Oddly, the *Freed* panel was legally silent when not explaining what legally happened to the extreme difference between the fair market value and the auction price. Equity cannot simply vanish. *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 164 (1980) (no transformation "by ipse dixit").

The Pung Property, undisputedly worth $194,400, was sold for a tax "debt" of $2,241.93 (never actually owed, see *infra*). The District Court held, however, that despite the Pung Property being worth nearly $200,000, its auction price sale of merely $76,000.08 was the starting point for just compensation owed (plus the additionally-required *Knick* interest). That was in error to contrary to what the Constitution demands and Supreme Court precedent has provided for previously.[4]

_____

[4] Moreover, this fair market value assert was not a random stab in the dark. As presented to the District Court, the person who later bought the Pung Property at the public tax auction turned around and sold it almost immediately for within six hundred dollars of the asserted fair market value price. **Transcript, RE 53, PageID # 1330**.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

The federal courts have long employed the concept of "fair market value" to determine the appropriate loss. *United States v. 564.54 Acres of Land*, 441 U.S. 506, 510-511 (1979). On appeal, Plaintiff asserts, per precedents like *Almota Farmers, Knick, Albert Hanson Lumber, Reynolds*, and *Virginia Electric*, Isabella County has "taken" $192,158.07 in equity ($194,400 - $2,241.93), not merely the "surplus proceeds" amount of $73,767.07 ($76,008.00 - $2,241.93). The proper "question is what has *the <u>owner</u> lost*, not what has the taker gained." *Brown v. Legal Found. of Wash.*, 538 U.S. 216, 236 (2003) (quoting *Boston Chamber of Commerce v. Boston*, 217 U.S. 189, 195 (1910)). Plaintiff did not lose only $76,000 in equity—it unquestionably lost ≈$192,000 in equity. Parsed carefully, *Freed* (and how it purports to apply *Hall*) violates the well-heeled constitutional standard under *Brown, Almota, Knick, Albert Hanson Lumber, Reynolds*, and *Virginia Electric*. Reversal is required.

## B.    Eighth Amendment Excessive Fines

Earlier in this case when the matter was before the Western District, the Eighth Amendment excessive fines claim was "dismissed without prejudice" because, according to the District Court, Plaintiff "expressly raised this as only an alternative theory." **Opinion and**

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

**Order, W.D. RE 119, PageID # 1357-1358**; see also **Opinion, RE 32, PageID # 1079** (recounting same). It was dismissed before any discovery into how Michigan's unique auction processes result in properties (like the Pung Property) being sold for a mere fraction of its known fair market value. Because the Fifth Amendment claim did not provide a complete remedy, the Eighth Amendment claim should have been given the chance to do so. Dismissal was in error.

The Eighth Amendment provides that "excessive bail shall not be required, *nor excessive fines imposed*, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Due Process Clause of the Fourteenth Amendment "makes the Eighth Amendment's prohibition against excessive fines… applicable to the State." *Cooper Industries, Inc. v. Leatherman Group*, 532 U.S. 424, 433-434 (2001); *Timbs v. Indiana*, 139 S.Ct. 682, 689 (2019). For large parts of our legal history, the Eighth Amendment held an unclear role beyond the criminal law. See *Browning-Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 263 (1989) ("To decide the instant case, however, we need not go so far as to hold that the Excessive Fines Clause applies just to criminal cases.")

-26-

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

Starting in 1993 with *Austin*, however, the protections of the "Excessive Fines Clause" have expanded.

While the recent *Tyler* decision in the Supreme Court was rendered solely as a Fifth Amendment taking, Justices Jackson and Gorsuch's concurrence explained that the trial level *Tyler* decision dismissing the Eighth Amendment claim "contains mistakes future lower courts should not be quick to emulate." *Tyler*, 143 S. Ct. at 1381 (Gorsuch, J., concurring). The concurrence outlines the same logical analysis that Plaintiff made in this case "[a]nd the Constitution has something to say about" that. *Id.* at 1382 (Gorsuch, J., concurring).

From the Magna Carte through today, "a Free-man shall not be amerced for a small fault." *Timbs*, 139 S.Ct. at 687. "The protection against excessive fines has been a constant shield throughout Anglo-American history." *Id.* at 689. "Protection against excessive punitive economic sanctions secured by the Clause is... both fundamental to our scheme of ordered liberty and deeply rooted in this Nation's history and tradition." *Id.* at 689. Today, Eighth Amendment excessive fines protections are being expansively applied across many various aspects of modern society beyond purely monetary-based criminal fines. E.g.

*Pimentel v. City of Los Angeles*, 974 F.3d 917, 925 (9th Cir. 2020) (non-criminal parking tickets penalties).

This expansive role of the Excessive Fines Clause began in 1993 when the U.S. Supreme Court in *Austin* expanded the applicability of the constitutional-based "excessive fines" limitation to encompass "in kind punishments" like *in-rem* civil forfeitures. *Austin* expressly places a constitutional limit on the government's power to exact punishment. *Austin v. United States*, 509 U.S. 602, 610 (1993). Forfeitures are punishments and "[e]conomic penalties imposed to deter willful noncompliance with the law are fines by any other name." *Tyler*, 143 S. Ct. at 1382 (Gorsuch, J., concurring).[5] Today, the "thing exacted" as punishment does not matter if cash or an asset "in kind" to be within the scope of the Clause's protection. The constitutional protection now "cuts across the division between the civil and the criminal law" and is now broadly meant "to limit the government's power *to punish*." *Austin,* 509 U.S. at 609, 610 (emphasis added).

To be an unconstitutionally excessive punishment, it must be

---

[5] It also perversely provides backdoor revenue for municipalities, which gives governments an abhorrent incentive to increase these punishments (or even rationalize them as not being punishments).

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

"grossly disproportional." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998). "The touchstone… is the principle of proportionality—the amount of the forfeiture must bear *some relationship* to the gravity of the offense that it is designed to punish." *Id.* at 334 (emphasis added). Here, there is a totally insufficient relationship, i.e. there is none.

So, this begs two questions. First (and the easily answered one) is whether the acts complained of and undertaken by Isabella County and its treasurer as an *in-rem* civil forfeiture exceeds being remedial and also results in "punishment?" The Supreme Court left no doubt—a "statutory *in-rem* forfeiture" (which is what the GPTA uses[6]) "imposes punishment." *Austin,* 509 U.S. at 614. After *Austin*, a statutory civil *in-rem* forfeiture, like the kind effectuated, is a "fine" within the meaning of the Excessive Fines Clause and thusly is subject to a challenge on excessiveness grounds.[7]

---

[6] See *Keweenaw Bay Outfitters v. Dep't of Treasury*, 651 N.W.2d 138, 142 (Mich. Ct. App. 2002) ("In Michigan, in rem proceedings include foreclosures for failure to pay taxes" citing *Smith v. Cliffs on the Bay Condominium Ass'n (On Remand)*, 626 N.W.2d 905, 906 (Mich. Ct. App. 2001)); M.C.L. § 211.78h(1).

[7] The purpose of counties and their treasurers "fire sale" auction to quickly obtain surplus proceeds was designed to hurriedly raise revenue from an asset they received for virtually nothing and do not have an interest in maximizing the securitization of the remaining equity—the

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

The second question is whether punishment in the form of destroying more than one hundred thousand dollars of equity, which is far in excess of the total possible tax delinquency for the wrong of not paying one's taxes, is unconstitutionally excessive, i.e. grossly disproportional? Plaintiff asserts it is.

Imposing the forfeiture of this much equity above and beyond the total tax delinquency[8] "does not serve" *any* "remedial purpose of compensating the Government for a loss." *Bajakajian*, 524 U.S. at 329. Thus, Plaintiff challenges, as grossly disproportionate and excessive punishment, the seizing and destroying of *the remaining equity* in the Pung Property assuming the taking remedy stands unchanged— $97,690.94 in equity ($192,158.07 - $76,000.08).

---

very purpose for which the precursors to the excessive fines clause sought to remedy by former kings of Europe. *Timbs*, 139 S. Ct. at 688.

[8] When an Isabella County property owner fails to pay property tax, regardless of the amount or reason, the county's treasurer, acting as the voluntary FGU on behalf of Isabella County, gets to impose penalties atop of the unpaid tax debt, and also adds two additional fees of $175.00 and $15.00. M.C.L. § 211.78a; M.C.L. § 211.78g(3). As FGU, Pickens also imposes all costs for the foreclosure process. Add all these amounts together, it establishes the "minimum bid" (see M.C.L. § 211.78m(16)(a)) for the sale of the property at the annual tax auction. That minimum bid is a remedial. But still Isabella County caused destruction and forfeiture of far, far more. That is punitive and, if disproportionate, it is unconstitutionally excessive.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

The concurrence in *Tyler* supports this theory of relief (which the majority never disavowed). *First*, Justices Gorsuch and Jackson confirm that the Supreme Court "has said that the Excessive Fines Clause applies to *any* statutory scheme that 'serv[es] in part to punish.'" *Tyler*, 143 S. Ct. at 1381 (Gorsuch, J., concurring). "So long as the law 'cannot fairly be said solely to serve a remedial purpose,' the Excessive Fines Clause applies." *Id.* (emphasis in original). The destruction of $97,690.94 is such a form of punishment. Because the District Court found that the retaining of surplus proceeds is a taking, the question is whether the destruction and non-return of the remaining equity—i.e. $97,690.94 in equity, is a grossly disproportional punitive fine for not timely paying taxes, which in this case, were not ever actually due. It is grossly disproportional fine for the non-payment of $2,241.93 (i.e. the amount of the PRE and any penalties thereon) and such in violation of the Eighth Amendment.

Unquestionably, Isabella County will point to *Freed* and *Hall* to try to preclude this claim as a matter of law. *Freed* found that "our holding in *Hall* remains binding" regarding this theory. 81 F.4th at 559. *Freed* explained that *Hall* summarily affirmed, without analysis, the

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

underlying district court's dismissal "on the ground that the GPTA is not punitive." That is in gross error. The Supreme Court in *Austin* was crystal clear— "a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, *is punishment*." *Austin,* 509 U.S. at 610 (emphasis added). More pointedly, "statutory in rem forfeiture imposes punishment" and "serves 'punitive and deterrent purposes.'" *Id.* at 614, 618. That happened here. The question becomes is whether this punitive punishment is excessive? And that excessiveness challenge has never had the chance to be explored in discovery or otherwise adjudicated in this case before the lower District Court. Thus, *Freed* was unfortunately in error given it conflict with Supreme Court precedents; the latter unquestionably controls. *State of Ohio v. United States*, 986 F.3d 618, 632 (6th Cir. 2021) ("as we've said, when a circuit panel overlooks a Supreme Court ruling, we are bound to discharge our duty to follow clearly controlling Supreme Court precedent rather than the holding in a decision of our court that failed to acknowledge the relevant Supreme Court precedent."). Reversal is required.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

## II.    Equal Protection Claim against DePriest Only

Plaintiff also brought a class-of-one claim against former Union Township Assessor Patricia DePriest for her removal of the PRE credit from the Pung Property. The District Court observed, but gave insufficient consideration to the notion, that "[n]o explanation is given why… the PRE for the [Pung] Property was not revoked back in 2004 (or 2005), [right] after Timothy Scott Pung passed away, rather than being revoked for the first time [for] 2007" in 2010. **Opinion, RE 33, PageID # 1109** (fn.14). But there *is* an explanation—DePriest treated Plaintiff uniquely different than everyone else because of her anger[9] towards the executor for previously succeeding in a tax tribunal case where DePriest was adjudicated to be blatantly and legally wrong.

The District Court explained, and Plaintiff agrees, that—

> To establish an equal protection class-of-one claim, a plaintiff must show that he was intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. The basis for a 'class of one' equal protection claim is that a person cannot be treated

---

[9] While anger towards Mr. Michael Pung, the executor of the Estate, is what is believed to have driven DePriest to do what she incredibly did, **Michael Pung Sec. Decl., RE 25-16, PageID # 986-987** (¶¶10, 18), her "subjective motivation" is irrelevant. *Willowbrook v. Olech*, 538 U.S. 562, 565 (2000).

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

differently from similarly situated individuals, absent a rational basis for such difference in treatment.

**Opinion, RE 33, PageID # 1106** (cleaned up) (citing *Village of Olech*, 538 U.S. at 564 (2000) and *Warren v. City of Athens, Ohio*, 411 F.3d 697, 710 (6th Cir. 2005)). Plaintiff also agrees with the District Court's recitation that "Plaintiff alleges that [DePriest] treated Plaintiff differently than [she] treated any other person in the same situation in Union Township" when "(a) the person for whom there is an affidavit of ownership to the property dies; (b); the property remains in the name of the estate (and has not passed to the beneficiaries or a new owner); and (c) no new affidavit of ownership is filed by the person(s) living at the property."

Here, *for the Pung Property only,* DePriest demanded a new second PRE affidavit some *eight years* after Timothy died (but not property transfer had occurred), else she would *arbitrarily* again revoke the PRE (which thereafter results in a moderate increase of the real property taxes being imposed, after-the-fact, on the Pung Property). So the question becomes did DePriest impose those same requirements for *anyone else* within Union Township, ever?

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

During DePriest's own deposition Plaintiff's counsel expressly asked DePriest to identify *literally* <u>*anyone*</u> where DePriest had similarly revoked a PRE because the personal representative of a probate estate was administering a property that had a valid PRE affidavit in place before the decedent's death but no new PRE affidavit thereafter was provided. **DePriest Dep., RE 23-18, PageID # 863-864** (pp. 68-71). Despite claiming these circumstances "regularly" happens, DePriest could not identify even a single similar demand she made upon another estate or local property during her 15-year career in local government. ***Id.* at PageID # 864** (p. 70).[10] Her answer was not surprising in the least.

Yet, the District Court, erroneously, was not convinced that such absence-of-evidence was enough proof to create a material question of fact. It framed the issue as Plaintiff failing to "produce… other cases where persons/estates were denied a PRE when a new affidavit was not filed by the person(s) living at the property." But that is in error. It is the

---

[10] Tellingly similar, DePriest also equally fails to present even a single example of revocation of a PRE and failed produced any in discovery. In short, it never happens *sans one time*. The production of weak or no evidence when strong should otherwise available can only lead to the conclusion that the strong would have been adverse. "Silence then becomes evidence of the most convincing character." *Interstate Cir., Inc. v. United States*, 306 U.S. 208, 226 (1939).

absence of any other single example of any revocation of a PRE by DePriest in similar fashion that definitively establishes that the Pung Estate was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." In fact, the Pung Estate was the *only* time of DePriest ever imposing such a requirement—one that has no basis in Michigan law, see **Tax Tribunal Decision, RE 23-4.**

Thus, Plaintiff was subjected to a one-of-a-kind arbitrary requirement that a new affidavit had to be submitted when the named owner had passed away but the property has not yet transferred from the Estate to the beneficiaries or a new owner. As such, an *Olech* claim has been successfully established to be argued to the *Pung* jury.

In the landmark *Olech* case establishing the propriety of the class-of-one claim, the Olechs asked the Village to connect their property to the municipal water supply but the Village conditioned the connection on the granting of a 33-foot easement. The Olechs objected, claiming that the Village has no such obligation for anyone else when seeking access to the water supply. The Village could not identify anyone else it required a 33-foot easement. The Olechs asserted that the 33-foot easement demand

was unequal treatment from others similarly situated. The Supreme Court recognized the cause of action, explaining "the purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute *or by its improper execution through duly constituted agents*." 538 U.S. at 564 (emphasis added).

So, one might ask, did Michigan law perhaps require such a PRE affidavit following the death of a property owner? The answer is no. Prior to revoking the PRE in 2012, DePriest has tried to previously revoke the very same PRE and the Michigan Tax Tribunal decreed that Michigan law *did not* require any new PRE affidavit in these circumstances. This was decided by ALJ Lasher's decision in March 2012 and affirmed later by the Michigan Court of Appeals. **ALJ Decision, RE 25-4**; *Isabella Cnty. Treasurer v. Estate of Pung*, No. 318616, 2015 Mich. App. LEXIS 227, at *9 (Mich. Ct. App. Feb. 10, 2015) ("The Tax Tribunal has already conclusively ruled that [the Estate] is the owner of the property, and because Timothy and Donnamarie Pung have lived at the subject property continuously since 2004, [the Estate] is entitled to the principal

residence exemption.") (**Mich. Ct. App. Decision, RE 25-7, PageID # 960**). And because Michigan law and precedent clearly established that a new PRE was never required, requiring one for only the Pung Property lacked any rational basis for such difference in treatment.

The District Court erred in dismissing Plaintiff's class-of-one equal protection claim. Reversal is required.

## III.    Due Process Claims against Pickens, DePriest, and Kopke

The final claim being challenged on appeal is the conspiracy to deny due process. Through a series of joint and conspiratorial actions, the local township tax assessor (DePriest), a local county treasurer (Pickens), and a clerk with the Michigan Tax Tribunal (Kopke) worked together to deprive the Pung Estate of its PRE credit without due process and caused the ultimate injury in the loss of their family's long-time home. Dismissal of all three was in error.

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Plaintiff "has successfully pled a § 1983 conspiracy by alleging that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

their constitutional rights, and (3) an overt act was committed." *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007). "Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy..." *Bazzi,* 658 F.3d at 602. This makes sense because "rarely in a conspiracy case will there be direct evidence of an express agreement among all the conspirators to conspire." *Weberg v. Franks*, 229 F.3d 514, 528 (6th Cir. 2000). Thusly, a plaintiff may rely on circumstantial evidence to establish an agreement among the conspirators. *Id.*; see also *Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (same). Moreover, each conspirator need not have known all of the details of the illegal plan or all of the participants involved to still be part of an illegal conspiracy. *Bazzi,* 658 F.3d at 602.

As previously noted, DePriest decided to revoke the Pung Property's PRE and doing so increased the real property taxes thereon. When challenged, the ALJ of the Michigan Tax Tribunal found in favor of Estate and declared the PRE credit belonged to the property and was entitled to the same. In other words, DePriest lost. This stung her hard and personally.

Following that decision, DePriest still initially refused to return the PRE credit to the property tax rolls as to the Pung Property. This directly resulted in a small, unpaid amount of property taxes equal to an amount consisting of the PRE credit amount. Despite knowing this tax cannot possibly be imposed, the County Treasurer, Defendant Steven Pickens, began tax foreclosure proceedings on the Pung Property. PR Pung again challenged that decision and won before the local circuit court in Mount Pleasant, Michigan. This is believed to have also rankled Defendants.[11] The Court of Appeals later affirmed. Interestingly, the Michigan Court of Appeals concluded that the Tax Tribunal had already conclusively established entitlement to the PRE credit and that, under the doctrine of res judicata, the Tax Tribunal's conclusion is conclusive as to the rights of the parties and their privies. That would include Marc, the Estate, Pickens, and DePriest.

After the loss, DePriest finally re-granted the PRE credit and the tax bills were issued. The amount PR Pung was informed was due was an amount with the PRE credit correctly applied. On December 31, 2012,

---

[11] Kopke was dismissed from the action on a Rule 12(b)(6) motion before any deposition testimony could be secured from him.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

the tax rolls closed in the normal course. This established a property interest for the Estate in the form the PRE credit. PR Pung paid the demanded tax amount in full for the Estate. It is thereafter things went south.

M.C.L. § 211.7cc(6) provides that if DePriest, as an assessor, believes a person is not entitled to the PRE credit, she may remove it by 1.) notifying the owner and 2.) the Michigan Department of Treasury in writing of the reason for the denial. She must also advise the owner that the denial may be appealed to the Michigan Tax Tribunal within 35 days thereafter. That is the process that is due. DePriest did _none_ of it. Instead, the tax rolls are simply closed on December 31. M.C.L. § 211.2(c)(2). Because DePriest took *sua sponte* and unnoticed action on revoking the PRE _after_ the tax rolls were closed and already transferred to the County Treasurer (i.e. Defendant Pickens), M.C.L. § 211.7cc(6) further provides that the tax roll shall only be amended to reflect the denial and _the county treasurer_ shall within 30 days of the date of the denial prepare and submit a supplemental tax bill for any additional taxes, together with interest at the rate of 1.25% per month or fraction of a month and penalties computed from the date the taxes were last

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

payable without interest or penalty. Like DePriest, Pickens also did none of these things either.

DePriest later explained she was told to do this because of what she and Kopke, Chief Clerk of the Tax Tribunal, agreed to do—

Q.          Initially when you sent out the notice for 2012, you [DePriest] granted the principal residence exemption, didn't you?

DePriest:   Yes I did.

Q.          And that would have gone out I believe in December of 2012?

DePriest:   Yes it did. I in turn, sir, **was told by Peter Kopke that I had no right to give that homestead** and I had to deny it, which in order of the tribunal I did.

Q.          Is there an order of the tribunal anywhere or was this based on a telephone conversation with somebody?

DePriest:   **With Peter Kopke because I had no documentation from anybody and I did not have the right to give that homestead** *was the words.*

Q.          You had been told by the administrative law judge that the estate was entitled to the principal residence exemption.

DePriest:   And it is, you have to have someone come forward for in the law (sic) to get it.

Q.          That's not what the administrative law judge --

DePriest:   I don't care what he says; the law says that you do.

**State Ct. Transcript, RE 23-8, PageID # 795-796**. It is unclear why Kopke decided to become involved with this at all, but DePriest testified that he was, in fact, with her. The net—but illegal—result was what appeared to be yet another unpaid tax debt (an "Improper Remaining Balance"), yet *was not actually owed* due to the Tax Tribunal's and Court of Appeals' prior rulings. Plaintiff and its executor were never informed of the Improper Remaining Balance. None of the notices under M.C.L. § 211.7cc(6) were issued and the Estate (via PR Pung) was not given notice of the right to challenge the joint action and agreement of DePriest, Pickens, and Kopke. Each of them knew this tax was wrong yet did nothing.

All the while matters pending and being decided in favor of PR Pung (as outlined above), Pickens commenced tax foreclosure proceedings against the Pung Property for not paying the unknown Improper Remaining Balance, plus the interest and penalties generated (without notice). Notice was never received by PR Pung that the Pung Property was being foreclosed upon for Improper Remaining Balance.

### A.    Kopke

The Western District dismissed Kopke from the made claim because it "continue[d] to believe that Plaintiff's allegations come up short as to [] Kopke." **W. Dist. Opinion, W.D. RE 119, PageID # 1354, 1358.** At the Rule 12(b)(6) stage, that was in error.

A Rule 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *DirecTV*, 487 F.3d at 476. The complaint is construed in the light most favorable to the plaintiff, accepted as true, and all reasonable inferences viewed in favor of the plaintiff. *Id.* The complaint only need be merely plausible on its face. *Iqbal*, 556 U.S. at 678. All allegations as deemed true even if "doubtful in fact." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Here, there was no lawful basis to deny the PRE in the manner done and there was a clear-enough understanding pled between Kopke and DePriest to show Kopke knew and was part of the conspiracy to deny the PRE to the Pung Property. It is alleged in the Second Amended Complaint that after a telephone conversation with Kopke (and possibly treasurer Pickens), DePriest agreed to remove the applied PRE without

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

notice to the personal representative of the Estate while not issuing a changed tax statement. **Sec. Am. Compl., W.D. RE 65, PageID # 512-513 (¶28)**. DePriest did all her unlawful actions "under and by an agreement and/or arrangement with" Kopke. ***Id.* at PageID # 513 (¶30)**. It is further alleged—which must be deemed true—that by an agreement with Kopke, DePriest removed the PRE credit from the Pung Property tax calculation vis-à-vis a created (but not proper issuance of the) Changed Tax Statement and unlawfully tried to deny the PRE for the 2012 in February 2013 in a manner expressly contrary to M.C.L. § 211.2(c)(2). ***Id.* at PageID # 513 (¶32)**.

All of this resulted in the denial of due process due to the conspiratorial agreement, which in turn, caused the ultimate loss of the Pung Property. Admittedly the exact reasons *why* Kopke did what he did in making an agreement with DePriest to remove the PRE (which was improper) is yet to be known, the allegations are that he was part of a civil conspiracy to deny due process as to the Estate's property right in the PRE because Defendant Kopke was "professionally angry and put off by the actions" the PR Pung. ***Id.* at PageID # 515, 517 (¶¶30, 51, 66)**. Enough sufficient facts (in the form of sworn testimony) was alleged for

Kopke to know what part of his role in the conspiracy for which he is being challenged in this Court. ***Id.* at PageID # 515-517 (¶¶48-69)**. Moreover, his self-serving alleged lack of involvement does not warrant dismissal as he, as a conspirator, need not have known all of the details of the illegal plan or all of the participants involved to still be part of an illegal conspiracy. *Bazzi,* 658 F.3d at 602. Kopke has failed to offer a sufficient basis—in the Rule 12(b)(6) context—to explain away why he did what he did, at least as described by DePriest unless he was intentionally trying to deprive the Estate of the PRE credit contrary to ALJ Lasher's decision when in a conspiracy with DePriest and possibly Pickens. Discovery should have been provided to confirm his role (which DePriest testified, under oath, happened). Thusly, pre-discovery dismissal was inappropriate under Rule 12(b)(6). Reversal is required.

## B.    DePriest and Pickens

While the Western District dismissed Kopke early, it permitted DePriest and Pickens to remain. At summary judgment, the District Court dismissed the due process conspiracy claim on narrow grounds when finding, in its view, Plaintiff's claim "is collaterally estopped" by decisions in the prior litigation regarding the foreclosure by Isabella

County. Because Plaintiff's claim focuses on a *different* due process violation than the one litigated in *In Re Petition of Isabella County Treasurer,* No. 329858, 2017 WL 1393854 (Mich. Ct. App. April 18, 2017), the District Court's dismissal was in error.

Below, the District Court concluded "the Michigan Court of Appeals squarely addressed the issue of whether Plaintiff's constitutional due process rights were violated *when Pickens, on behalf of Isabella County, foreclosed on the [Pung] Property*." **Opinion, RE 33, PageID # 1102-1103**. But the due process claim being asserted here in the instant case was not the foreclosure itself (for which preclusion would most definitely apply) but instead the denial of due process by the ex parte removal of the PRE credit in February 2013 via the joint conspiratorial agreement—an event that predates the foreclosure and was not actually and necessarily adjudicated by the Michigan Court of Appeals.

For the preclusion doctrine of collateral estoppel to halt re-litigation of an issue[12] in a subsequent action between the same (or different)

---

[12] "Res judicata and collateral estoppel are not the same" thing. *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 660 (6th Cir. 1990). Res judicata, or claim preclusion as it is more helpfully termed, is the doctrine, simply stated, by which a final judgment on the merits in an action precludes a party from bringing a

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

parties, where the prior proceeding culminated in a valid final judgment between the same parties, the issue had to be (1) actually litigated and (2) necessarily determined. *Rental Props. Owners Ass'n of Kent Cnty. v. Kent Cnty. Treasurer*, 866 N.W.2d 817, 834 (Mich. Ct. App. 2014). Because an awarded PRE is a property interest[13], the deprivation of the same must comport with sufficient process. E.g. *Johnson v. City of Saginaw, Mich.*, 980 F.3d 497, 507 (6th Cir. 2020) (due process requires notice and the opportunity to be heard at a meaningful time and in a meaningful manner prior to deprivation of a property right). Here, it was never provided, **Michael Pung Sec. Decl., RE 25-16, PageID # 988** (¶24), and was not actually litigated or otherwise necessarily determined

---

subsequent lawsuit on the same claim or cause of action or raising a new defense to defeat a prior judgment. It precludes not only relitigating a claim or cause of action previously adjudicated, it also precludes litigating a claim or defense that should have been raised, but was not, in a claim or cause of action previously adjudicated. *** Collateral estoppel, or issue preclusion as it is better termed, precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause of action. *Id.* at 660-661.

[13] See M.C.L. § 211.7cc; **Tax Tribunal Decision, RE 23-4** (confirming entitlement). A homestead credit is a property interest. See e.g. *In re Brent*, 68 B.R. 893, 895 (Bankr. D.Vt. 1987).

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

by the Michigan Court of Appeals in *Isabella Cnty. Treasurer*. As such, collateral estoppel does not apply and cannot be applied.[14]

The issue of a conspiratorial agreement to work together to not to provide written notice and the opportunity first be heard before the revocation of the PRE (and later cause inevitable foreclosure) violated due process by conspiracy. Reversal is required.

## CONCLUSION / RELIEF REQUESTED

In summary, the federal trial courts below (the Eastern and Western Districts of Michigan) errored in dismissing certain claims as well as specifically the Eastern District errored in not awarding sufficient damages under the Fifth Amendment or recognizing binding precedents from the US Supreme Court regarding the Eighth Amendment. Reversal is requested. This Court is requested to vacate the entered judgment and reverse the lower court's erroneous order(s) and remand for further

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

---

[14] But, honestly, why would they do that? The reason is clear when viewing the facts in favor of Plaintiff—DePriest (as directed by Kopke) and Pickens jointly decided to use their office's respective powers to improperly and wrongfully continue to deny of the PRE credit for the Winter 2012—being directly contrary to ALJ Lasher's decision—to ultimately cause the loss of the Pung Property in retaliation for the legal challenges [Plaintiff] previously undertook." ***Id.* at PageID # 988-989** (¶¶25-32).

proceedings consistent with the corrections requested herein.

Date: December 11, 2023            s/ Philip L. Ellison
                                   PHILIP L. ELLISON
                                   OUTSIDE LEGAL COUNSEL PLC
                                   PO Box 107
                                   Hemlock, MI 48626
                                   (989) 642-0055
                                   pellison@olcplc.com

                                   Attorney for Appellant

## CERTIFICATE OF COMPLIANCE

Pursuant to Sixth Circuit Rule 32(a)(7)(C) and Sixth Circuit Rule 32(a), the undersigned certifies that this brief complies with the type-volume limitations of the Sixth Circuit Rule 32(a)(7)(B).

This brief has been prepared in proportional typeface using Century School Book 14-point font. The principal portion of brief, including headers and footnotes, contains 10,270 words according to the Word Count feature in the Microsoft Word program, being less than 13,000 words.

The undersigned understands that a material misrepresentation in completing this certificate or circumvention of the type-volume limitations may result in the Court's striking the brief and imposing sanctions against the person signing the brief.

Date: December 11, 2023        s/ Philip L. Ellison
                               PHILIP L. ELLISON
                               OUTSIDE LEGAL COUNSEL PLC
                               PO Box 107
                               Hemlock, MI 48626
                               (989) 642-0055
                               pellison@olcplc.com

                               Attorney for Appellant

# CERTIFICATE OF SERVICE

I hereby certify that on the date stated below, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notice of and a copy of such filing to counsel of record at their email address(es) of record.

Date: December 11, 2023

s/ Philip L. Ellison
PHILIP L. ELLISON
OUTSIDE LEGAL COUNSEL PLC
PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

Attorney for Appellant

# DESIGNATION OF RELEVANT
# DISTRICT COURT DOCUMENTS

## US DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN

| RE. | PageID Range | Description of the Document |
|---|---|---|
| 65 | #509-523 | Second Amended Complaint |
| 74-1 | #683 | Affidavit of Peter M. Kopke |
| 119 | #1348-1359 | West District of Michigan Opinion |
| 144 | #1432-1434 | West District of Michigan Transfer Order |

## US DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

| RE. | PageID Range | Description of the Document |
|---|---|---|
| 19-7 | #660-670 | Patricia DePriest Affidavit |
| 23-2 | #764 | Pung Deed |
| 23-3 | #765 | Timothy S. Pung Homestead Affidavit |
| 23-4 | #766 | FAQ |
| 23-6 | #773-778 | State Court (Isabella Cnty Trial) Decision |
| 23-8 | #784-808 | State Court (Isabella Cnty Trial) Transcript |
| 23-12 | #821 | Michigan Supreme Court Order |
| 23-13 | #822 | Treasurer's Deed |
| 23-17 | #843-848 | Michael Pung Declaration |
| 23-18 | #846-864 | Patricia DePriest Deposition Transcript |
| 23-19 | #865 | Winter 2012 Tax Bill |
| 23-20 | #866 | Patricia DePriest Letter |
| 25-4 | #943-348 | ALJ (Michigan Tax Tribunal) Decision |
| 25-7 | 956-960 | Michigan Court of Appeals Decision |
| 25-16 | #986-991 | Michael Pung Second Declaration |
| 25-20 | #1032-1035 | Michael Pung Letter to Peter Kopke |
| 32 | #1076-1095 | Opinion |
| 33 | #1096-1113 | Opinion |
| 34 | #1114-1115 | Judgment |
| 35 | #1116 | Notice of Appeal |

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com